UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MARK DELEON,                              )
                                         )
    Plaintiff,                           )
                                         )
        v.                               )    Cause No. 2:21-cv-224
                                         )
NORFOLK SOUTHERN RAILWAY                 )
COMPANY,                                 )
                                         )
    Defendant.                           )

## <u>ORDER AND OPINION</u>

Defendant, Norfolk Southern Railway Company, filed a motion for

reconsideration [DE 128] asking the Court to reconsider a holding in its order denying

summary judgment. In particular, Norfolk asserts that the Court was mistaken in

holding that, in this case, the ladder at issue on the flatbed railcar could fall within the

purview of the Safety Appliance Act ("SAA") even if it was not specifically required by

the FRA regulations. [DE 128, 1.]

### Discussion

Motions for reconsideration should be granted, "to correct manifest errors of law

or fact or to present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d

467, 474 (7th Cir. 2008). A motion for reconsideration may also be granted if there is a

significant change in the law since the submission of the issues to the court. *Mindell v.

Kronfeld*, 2004 WL 1595334, at *1 (N.D. Ill. July 15, 2004). Given their limited purpose,

1

courts rarely grant motions to reconsider. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990).

In its motion, Norfolk does not argue the Court materially misunderstood the facts of the case, does not present newly-discovered evidence to the Court, nor has Norfolk argued that there is a significant change in the law.[1] Rather, Norfolk's motion for reconsideration is based solely on the contention that the Court made a manifest error of law. For the sake of expediency, I will assume knowledge of my previous opinion, where I fully discussed the issue presently before me. *DeLeon v. Norfolk Southern Railway Co.,* 2026 WL 1408491 (N.D. Ind. May 19, 2026). Instead of repeating myself, I will specifically address Norfolk's arguments on reconsideration here.

Norfolk recognized "that the Court's decision tracks the SAA's legislative history" but asserts that the legislative history cannot overcome the plain language of the statute. [DE 128, 1.] That's true, but it only gets Norfolk so far. If I had relied *solely* on legislative history in denying summary judgment, then there would be a problem. I'm fully aware of the peril of relying on legislative history in statutory construction. Indeed, just last week, the Supreme Court reminded us again that "legislative history"

---

[1] Norfolk does not affirmatively argue the Court should reconsider based on a change in the law, but it does have one citation to a post-briefing opinion: the Supreme Court's decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026). Norfolk asserts that the Court gave full effect to new statutory text in that case despite the concurrence's argument that the change was a mere "conforming amendment." [DE 128, 4.] The Supreme Court's decision does not involve FELA, the SAA or a recodification, nor does it mention a legislative statement of purpose in the statute specifically disclaiming substantive change, nor does the majority discuss substantial case law post-amendment interpreting pre-alteration decisions on the statute as undisturbed, as this case has. Moreover, the issue is only discussed by the majority briefly in a footnote and in the concurring opinion. *Plaquemines Parish* is dissimilar, and the footnote does not constitute a "significant change in the law" so sweeping as to warrant reconsideration of this Court's unrelated decision on the interpretation of the SAA.

is a dirty phrase and the third rail of statutory construction. *See FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. ----, No. 24-345, 2026 WL 1686059 at *7-9 (June 11, 2026). But in this case, the legislative history doesn't prove what the statute means, it merely confirms it, along with binding Supreme Court precedent, the language of the statute itself and other case law.

In the hierarchy of the judiciary, I sit at the bottom. At the risk of stating the obvious, I am bound by my superior's opinions, especially those of the Supreme Court. Nevertheless, in its briefing on reconsideration, Norfolk skirts around the fact that it is essentially asking me to find *Shields v. Atlantic Coast Line R. Co.*, 350 U.S. 318 (1956) to no longer be binding precedent despite the fact that no court—certainly not the Supreme Court—has ever said such a thing. It's a breathtaking request. It's especially problematic inasmuch as the only citation to *Shields* in Norfolk's opening brief for their motion for reconsideration is *to the dissenting opinion*. *See* DE 128 at 7.  The implied argument is that the 1994 recodification of the SAA somehow overruled *Shields* without anyone knowing it or saying it. Most courts that I have encountered have said precisely the opposite—that the 1994 recodification of the SAA left *Shields* and other pre-recodification jurisprudence undisturbed.[2] Courts have therefore continued to substantively apply the relevant holding in *Shields* since 1994.

---

[2] *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 288 n.1 (4th Cir. 1999) ("Although the 1994 Federal Railroad Safety Authorization Act recodified the FSAA, the Railroad Safety Authorization Act's legislative history clearly demonstrates that the substantive provisions of the FSAA remain unchanged."); *Williams v. Norfolk Southern Ry. Co.*, 126 F. Supp. 2d 986, 992 n.6 (W.D. Va. 2000) ("This case interpreted the prior codification of the hand brake provision of the FSAA… However, as the 1994 recodification intended no substantive changes, its holding is still good law."); *Synar v. Union Pacific R. Co.*, 2001 WL 1263573, at *14 n.1 (Tex. App. 2001) ("Congress intended merely to restate, without substantive change, laws previously

3

For example, nowhere in its briefing for reconsideration does Norfolk mention *Onysko v. Delaware & Hudson Railway Company, Inc.*, 2017 WL 372235, at *1 (M.D. Pa. Jan. 26, 2017) or *Hall v. BNSF Ry. Co.*, 2018 WL 5808733, at *2 (W.D. Mo. June 5, 2018), both of which were cited in the Court's opinion. In both of those opinions, whether *Shields* was good law was a controlling issue, and the courts recognized that it was. For *Onysko* in particular, I spent a full paragraph explaining how instructive the case was. *See Onysko*, 2017 WL 372235 at *1 (Citing to *Shields* and stating "While crossover boards are not specifically required by the FSAA on gondola cars, it nonetheless constitutes a safety appliance for the purpose of the FSAA, because once Defendant undertook to provide this board, it had a duty to ensure that the appliance was safe and secure, as required by the FSAA."). These boards are covered in the exact same provision dealing with ladders, which was changed by the 1994 recodification in the same way. *See* 49 U.S.C. § 20302. Still, somehow, Norfolk argues that the cases I relied upon "did not apply provisions [of the SAA] whose changed language would have made any difference[.]" [DE 128 at 7.]

Second, and more importantly, I didn't merely point to numerous other cases and the legislative history for my interpretation of the SAA; I pointed to the statute itself which plainly states that "[c]ertain general and permanent laws of the United States, related to transportation, are revised, codified, and enacted by subsections (c)-(e) of this section *without substantive change*." Act of July 5, 1994, Sec. 1, 108 Stat. 745. As

---

enacted. It declared that the new provisions may not be construed as making a substantive change in the laws replaced…Accordingly, we rely on cases issued before and after the 1994 recodification.").

Norfolk concedes, this is "not mere 'legislative history.'" [DE 128 at 5 (quoting *Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 480 (7th Cir. 2016), aff'd, 583 U.S. 202 (2018).] It is, instead, a legislative statement of purpose which is part of the statute itself. As noted in *Rubin,* "[n]one of the standard objections to judicial reliance on legislative history inhibit our resort to a *statutory* declaration of purpose for help in interpreting a part of the statute to which it applies." *Rubin*, 830 F.3d at 480 (original emphasis). Indeed, *Rubin* held that the legislative statement of purpose in that case was useful in clarifying the meaning of the statute at issue. *Rubin*, 830 F.3d at 479 (stating that the statute's "declaration of purpose clarifies that foreign states may lose execution immunity only by virtue of *their own* commercial use of their property in the United States"). The same is true here with reference to the SAA's statement of legislative purpose set out in the recodified statute.

Norfolk also spends considerable time discussing *United States v. Wells*, 519 U.S. 482 (1997). But *Wells* misses the mark by a wide margin. That case determined that a false statement offense under 18 U.S.C. § 1014, which was a recodification of the federal criminal code, did not have a materiality element despite, as Norfolk states, some of the provisions it was recodifying previously having one. [DE 128, 3 ("Court explained that § 1014 was adopted in a supposedly non-substantive recodification that restated various different false-statement statutes, some of which previously 'contained express materiality requirements and lost them in the course of consolidation.'") (quoting *Wells*, 519 U.S. at 492-93). What Norfolk leaves out is that § 1014 brought together 13 provisions, 10 of which "contained no express materiality provision[.]" *Wells*, 519 U.S.

492. The Court then determined that "in these circumstances," where the majority of the provisions consolidated into § 1014 did not contain a materiality provision and the recodified statute did not include it, the "most likely inference is that Congress deliberately dropped the term[.]" *Id.* at 493. That interpretive device employed by the Supreme Court, which looked at the substance of the preceding statutes to help determine the intent of Congress when it recodified, is the opposite of helpful for Norfolk's argument here. If the previous meaning of the statute being recodified is relevant, that merely adds additional support to *Shields*' interpretation of the previous version of the SAA being good law.

Norfolk also argues that "it did not matter in *Wells* that the recodification disclaimed any substantive change. The *revision notes accompanying the recodification stated* explicitly that 'the consolidation was without change of substance.'" [DE 128, 3 (emphasis added)]. First, because multiple provisions with different terms were consolidated into a single provision in § 1014, the effect of the revision note in *Wells* stating that no substantive change was meant by any of them is unclear at best and necessarily "simply wrong" at worst. *Wells*, 519 U.S. at 497.

Second, and even more clearly distinguishing the disclaimer mentioned in *Wells* from that in the SAA, revision notes are not the same thing as the text of the legislation itself, a point that *Wells* discussed and relied on. *Id.* (distinguishing reviser's notes from the actual "provision of the statute" and stating that "[t]hose who write revisers' notes have proven fallible before."). In other words, the statement in the SAA disclaiming a substantive change in the law to the specific section at issue in this case *appears in the*

*statute itself*, not merely in revision notes. I can't pretend that this critical, clarifying language isn't there, although that's what Norfolk wants me to do. All of which makes Norfolk's gentle reminder to me that my "inquiry begins with the statutory text, and ends there as well" ring a bit hollow here. [DE 128, 2 (internal quotations omitted).]

Lastly, Norfolk does not grapple with the absurd results its interpretation of the statute would produce in this case, as laid out in the opinion denying summary judgment. *DeLeon*, 2026 WL 1408491 at *7. Instead, while Norfolk recognizes that a Court may consider the absurd results caused by a certain statutory interpretation, Norfolk states in a conclusory manner that "there is nothing remotely absurd about keying the SAA's requirements to the expert agency's detailed regulations." [DE 128, 2, 3.] However, as I pointed out in my opinion, when it comes specifically to ladders on flatbed railcars used in place of handholds, the results of Norfolk's reading are, in fact, absurd. The regulations require handholds on flatbed railcars, and those handholds must be secure. 49 C.F.R. § 231.6. However, the regulations allow the tread of a ladder to function as a handhold, so railcars can have ladders instead of mere handholds on flatbed cars. *Id.*; 49 C.F.R. § 231.1. Under Norfolk's reading, while a handhold would be required to be secure by the SAA, a ladder put in its place could have bent or warped rungs making the ladder tread that functions as a handhold useless (indeed, dangerous), without possibly being in violation of the SAA. That is not sensible.

In sum, none of the points Norfolk raises convinces me that I made a manifest error in denying summary judgment on the SAA claim. The opinion relied on binding Supreme Court authority (*Shields*), the language of the SAA itself, significant additional

case law, and the absurdity of the result to hold otherwise. And yes, I did mention legislative history as a *fifth reason* for the conclusion I reached because it too was persuasive.  While reliance on a bobby pin *alone* to hold up one's pants might be a poor choice, there would be no reason to reconsider it when there is also a belt, suspenders, one hand, and then another also keeping the dungarees secure.

Norfolk's motion for reconsideration [DE 128] is DENIED.

ENTERED: June 16, 2026.

/s/ Philip P. Simon
United States District Judge