UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARK DELEON,<br><br>Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>Defendant. | ) | Cause No. 2:21-cv-224 |

**ORDER AND OPINION**

This case arises from a tragic event at Norfolk Southern's Burns Harbor Trainyard, in which Mark DeLeon's left arm was torn off by a moving railcar while working the night shift on July 13, 2021. For an expansive discussion of the facts in this case, readers should refer to my summary judgment order issued on May 19, 2026. [DE 124.] It is enough to say, for purposes of the present motion, that one of DeLeon's theories of the case is that, shortly after mounting a railcar, he hit an air station set up too close to the track, causing him to fall and for his arm to go under the railcar.

This matter is presently before me on DeLeon's motion in limine to permit evidence of the Indiana Clearance Statute, Indiana Code § 8-8-1-12, as relevant evidence of the standard of care in this case. [DE 133, ¶ 7.] The Indiana Clearance Statute makes it unlawful for a rail carrier to build a structure that is less than "eight (8) feet from the center of the track without first obtaining permission from the Indiana department of transportation." Indiana Code § 8-8-1-12. Defendant Norfolk Southern opposes the

motion, arguing that the Indiana Clearance Statute should be inadmissible at trial because it is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), and is otherwise irrelevant to the standard of care. [DE 151.] At a hearing on the motions in limine on November 3, 2026, where I ruled on most of the motions in limine and deferred ruling on others until trial, I requested additional briefing on this particular issue. [DE 193.]

"A court excludes evidence on a motion in limine only if the evidence clearly is not admissible for any purpose." *White v. Kroger Ltd. Partnership II*, 2011 WL 2551418, at *1 (N.D. Ind. June 27, 2011). "Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context." *Id.* Additionally, allowing certain evidence at this stage is not a final ruling on the matter; rather, "it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded." *Id.*; *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

DeLeon argues that the air station that he struck was built too close to the tracks in violation of the Indiana Clearance Statute, and that this should be considered by the jury when determining the standard of care. A violation of a state statute does not independently establish the standard of care for a FELA case. *Johnson v. Union Pacific R. Co.*, 2007 WL 2914886, at *2 (D. Neb. Oct. 4, 2007). However, state laws and regulations, if relevant and not preempted, may be offered as evidence to show whether a railroad

used reasonable care and complied with industry standards. *Id.* at *2 ("Accordingly, complying with the Nebraska's track clearance regulations cannot be interpreted as setting the standard of care owed under the FELA. That said, the Nebraska regulation, and compliance therewith, may be offered as evidence that the railroad used reasonable care and complied with industry track clearance standards."); *Immel v. Union Pacific Railroad Co.*, 2019 WL 3997088, at *5 (D. Col. Aug. 23, 2019) (stating that, in a FELA case, a violation of a state clearance statute "may be admitted at trial only as evidence of the applicable standard of care."). So, Indiana's clearance statute is surely relevant in this case.

But just because it would generally be relevant does not answer the critical question of whether it is preempted by federal law. Norfolk argues that the Indiana statute in question dealing with how close structures can be built in relation to rail tracks is preempted under the ICCTA. "Congress's purpose in passing the ICCTA was to establish an exclusive federal scheme of economic regulation and deregulation for railroad transportation." *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1132 (10th Cir. 2007). The ICCTA thus primarily concerns economic regulation and broadly preempts "all state laws that reasonably may be said to have the effect of *managing or governing rail transportation*, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) (emphasis added)); *see also Clark v. Providence & Worcester R. Co.*, 2011 WL 3236087, at *2 (D. Mass. July 26, 2011) ("The ICCTA, on the

other hand, is primarily concerned with state *economic* regulation of railway activities, including attempts to 'manage or govern rail transportation.'") (quoting *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 806 (5th Cir. 2011)).

Generally, safety statutes like the clearance statute at issue here are analyzed under the Federal Railroad Safety Act ("FRSA"), not the ICCTA. *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009) ("[The] FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law."); *Perry v. Union Pacific RR Co.*, 2021 WL 1123580 (D. Col. Mar. 24, 2021) ("The basis of Plaintiff's negligence claim pertains to railroad safety procedures and Defendant's alleged failure to comply with those procedures which ultimately caused his personal injury. Thus, the Court finds that ICCTA does not preempt Plaintiff's claim."); *see also Griffioen v. Cedar Rapids and Iowa City Railway Company*, 914 N.W.2d 273, 278-79 (Iowa 2018) ("Two categories of state-law tort claims typically are not preempted by the ICCTA. One is a tort claim that challenges a railroad's activities other than the maintenance and operation of its rail lines. A second category of claims are those relating to rail safety, where a separate, narrower preemption provision in the Federal Rail Safety Act (FRSA) applies.") (internal citations omitted).

The FRSA has a narrower preemption provision than the ICCTA and only preempts state law when it expressly has a regulation on the same issue. 49 U.S.C. § 20106 ("A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security

matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.”). As both parties have admitted, the Federal Railroad Administration has issued no regulation pursuant to the FRSA concerning close clearances. All of which means the FRSA, which generally is the relevant statute for analyzing preemption of a rail safety statute, does not preempt the Indiana Clearance Statute. *Island Park*, 559 F.3d at 107 (“Several circuits that have examined the interplay between ICCTA and FRSA have concluded that the federal statutory scheme places principal federal regulatory authority for rail safety with the Federal Railroad Administration… We agree. Thus, FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law.”).

Many courts have ruled that the ICCTA does not preempt certain state statutes related to safety, including clearance statutes, and have allowed such statutes to be considered in FELA cases. *See, e.g., Tyrrell v. Norfolk Southern*, 248 F.3d 517 (6th Cir. 2001) (holding that the ICCTA did not preempt a state clearance statute); *Immel*, 2019 WL 3997088, at *5 (stating that, in a FELA case, a violation of a close clearance statute “may be admitted at trial only as evidence of the applicable standard of care.”); *see also Emerson*, 503 F.3d at 1132 (noting that the Surface Transportation Board had recognized that the ICCTA “does not completely remove any ability of state or local authorities to take action that affects railroad property.”).

This is not to say that a regulation concerning rail safety that is not covered by an FRA regulation could *never* be preempted by the ICCTA. Indeed, merely identifying a

statute as being related to safety is not dispositive. If a state law was related to safety but also, for example, "directly regulate[d] a railroad's switching rates and service," directly dictated rail schedules, or in some other way affected the general operation or management of rail transportation, then it would still fall within the broad preemption of the ICCTA because it would be "manag[ing] or govern[ing] rail transportation in the economic realm." *Elam*, 635 F.3d at 807; *see also Adrian & Blissfield R. Co. v. Village of Blissfield*, 550 F.3d 533, 537 n.1 (6th Cir. 2008) ("A statute or regulation that is not preempted by the FRSA may be preempted by the Termination Act, and vice versa."). But Norfolk has not shown that this Indiana statutory provision, which is narrowly focused on clearances, meaningfully manages or governs rail operations. Instead, it seems plain to me that the Indiana statute is a safety provision that is not preempted by the ICCTA.

Lastly, I note that (coincidentally) just one day before the deadline for the supplemental briefing for this issue, the Surface Transportation Board ("STB") released a policy statement concerning jurisdiction and preemption under the ICCTA. *Policy Statement on Jurisdiction and Preemption Under the ICC Termination Act*, 91 Fed. Reg. 70,956 (Nov. 9, 2026). The STB is authorized by Congress to administer the ICCTA, and courts often consider the STB's statements and rulings when making decisions concerning the ICCTA. *BNSF Ry. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022).

The policy statement lays out the ICCTA's broad preemption consistently with the case law, stating clearly that "state or local laws are preempted categorically if they may reasonably be understood to manage or govern transportation by a rail carrier or

certain related activities[.]" 91 Fed. Reg. 70,956. The policy statement notes that some "courts have suggested that only FRSA preemption can apply to at least some safety related issues… [a]nd the Board has partially endorsed the same view in non-binding guidance." *Id.* (citing *Tyrrell*, *Island Park*, and their 2018 advisory guidance in *Waneck*, FD 36167, slip op. at 5 (STB served Oct. 31, 2018)).

So, while the policy statement explains that the ICCTA can preempt certain state safety statutes and regulations if they, in effect, manage or govern rail transportation, it explicitly confirms that the "FRSA applies to primarily safety-related claims, including state-law tort claims related to a collision between a train and a tour bus at a railroad crossing… *and state regulation of the clearance distance* between tracks, *see Tyrrell*, 248 F.3d at 522-24." *Id.* (emphasis added). The STB statement does not disavow the court opinions discussed above; in fact, it largely endorses them, including *Tyrrell*. It merely cautions that the "FRSA cannot be read to create a loophole in the ICCTA that would permit a patchwork of state and local regulation over rail transportation simply because the regulations *also happen to touch on 'safety-related' matters*." *Id.* (internal quotation marks omitted) (emphasis added).

Norfolk has not shown that Indiana's clearance statute merely "touches" on safety while in effect managing or governing rail operations, nor do I read the statute as doing so. Because Norfolk has not made this showing, it has not established that this statute is inconsistent with the ICCTA nor that it otherwise unreasonably burdens rail transportation. *Id.* ("ICCTA preemption may still apply if upholding the state or local

regulation addresses a generally-applicable concern, would be inconsistent with the ICCTA, or would otherwise unreasonably burden rail transportation.”).

In sum, because the Indiana Clearance Statute is not preempted by the FRSA nor the ICCTA, and the statute is relevant to DeLeon’s theory of the case, I cannot find that it is clearly inadmissible for all purposes. Thus, DeLeon’s motion in limine to permit evidence of the Indiana Clearance Statute is, at this pretrial stage, conditionally **GRANTED**.

SO ORDERED.

ENTERED: November 18, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT